SANDRA MARIE BROWN                                                    Plaintiff,

v.

BANKS GROCERY COMPANY                                                Defendant.


## MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon Plaintiff Sandra Marie Brown's Motion to Alter

or Amend Judgment. (Docket No. 61.) Defendant Banks Grocery Company ("Banks") has

responded, (Docket No. 62), and Brown has replied, (Docket No. 63). Fully briefed, this matter

is ripe for adjudication. For the reasons that follow, Brown's Motion to Alter or Amend

Judgment will be GRANTED.


### Factual Background

Brown's claim arises from a slip and fall she suffered on August 29, 2010. At

approximately four o'clock in the afternoon, Brown decided to go grocery shopping at SuperValu

Foods #3 ("SuperValu"), located in Paducah, Kentucky and owned by Banks. During her drive

to the store, the weather became rainy: "a little more than a sprinkle," but not enough to

necessitate windshield wipers. (Docket No. 28-2 at 44-45.)

Wearing flip-flop sandals, Brown walked across the wet parking lot to the store's

entrance. She passed through SuperValu's first set of automatic sliding glass doors, which

opened onto a foyer consisting of nearly seventeen feet of carpet. She proceeded across the

foyer to a second set of automatic doors, which opened onto the tile floor of the grocery area. As

she stepped off the carpet onto the tile, the bottom of her flip-flop, still wet with rain, encountered the dry tile; she slipped and fell onto her left side, injuring her leg, arm, him, and lower back. Brown, a long-time patron of the store, contends that a rug was typically placed in the area where she fell. She does not claim that the water causing her accident was within SuperValu's control; rather, she testified that the moisture had already accumulated on her flip-flops when she entered the store.

Brown's safety expert, Dr. George V. Nichols, noted that the floor was safe under dry conditions. (*See* Docket No. 28-8 at 20 ("If it were dry and no moisture present, I'd have no reason to suspect that the slipperiness of the floor would have been increased.").) However, Dr. Nichols offered a two-pronged criticism of SuperValu. First, he opined that SuperValu should have provided additional carpeting on the date of the accident. He also concluded that SuperValu failed to adequately warn Brown of the potentially slippery conditions caused by the rain.

Greg Greene, the store's manager, testified that on the date of Brown's accident, SuperValu employees placed wet floor signs at the entrance, "where the flooring transitions from carpet to tile." (Docket No. 33-1 at 6.) However, there is no indication that such signs were placed in the entryway until after Brown's fall. Greene also explained that twice each year, Banks hires a cleaning company to strip, clean, and wax the tile floors. He noted that twice weekly, employees buff the store's floors.

In its Memorandum Opinion and Order granting Banks' Motion for Summary Judgment, the Court concluded that SuperValu did not breach a duty to Brown by failing to either provide additional carpeting or to warn of the risks attendant to walking on the floor wearing rain-dampened shoes. The Court noted that Brown's own expert testified that the floor, both dry and

clean, presented no dangerous condition until Brown's sandals struck it. The Court concluded that the risks inherent in walking with wet shoes onto an otherwise dry, hard surface are open and obvious, precluding SuperValu's need to warn of such conditions.

Brown now submits that the Court should alter its judgment in light of newly discovered evidence. According to Brown, the day before the Court granted Banks' Motion for Summary Judgment, Banks delivered its Supplemental Answers to Plaintiff's Interrogatory 15. This Interrogatory directed:

> If Banks Grocery has ever been a party to any lawsuit, state the name of each case, its involvement in the case, where the case was filed, the outcome of the case, the approximate date the case was filed and the case number if available. As part of your answer to this interrogatory, please specify whether Banks Grocery has ever had a claim made against it for any personal injury for which no lawsuit was filed.

(Docket No. 61-1 at 2.) In response, Banks produced two spreadsheets, the first listing all claims against it and the second describing the events from which such claims arose. Brown points to Spreadsheets 2.3 and 2.4, which indicate six personal injury insurance claims resulting from falls that occurred prior to Brown's accident. The spreadsheet entries for three such dates indicate rainy weather on the date of the incident.

### Legal Standard

"District courts have inherent power to reconsider interlocutory orders and reopen any part of a case before entry of a final judgment." *In re Saffady*, 524 F.3d 799, 803 (6th Cir. 2008). "A district court may modify, or even rescind, such interlocutory orders." *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991).

The Sixth Circuit and its lower courts have consistently held that a Rule 59 motion should not be used either to reargue a case on the merits or to reargue issues already presented, *see Whitehead v. Bowen*, 301 F. App'x 484, 489 (6th Cir. 2008) (citing *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998)), or otherwise to "merely restyle or rehash the initial issues," *Derby City Capital, LLC v. Trinity HR Servs.*, 949 F. Supp. 2d 712, 746 (W.D. Ky. 2013) (quoting *White v. Hitachi, Ltd.*, 2008 WL 782565, at *1 (E.D. Tenn. Mar. 20, 2008)). Instead, "[w]here a party views the law in a light contrary to that of this Court, its proper recourse is not by way of a motion for reconsideration but appeal to the Sixth Circuit." *Hitachi Med. Sys. Am., Inc. v. Branch*, 2010 WL 2836788, at *1 (N.D. Ohio July 20, 2010).

Accordingly, the Sixth Circuit instructs that a motion for reconsideration should only be granted on four grounds: "Under Rule 59, a court may alter or amend a judgment based on: '(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice.'" *Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.*, 616 F.3d 612, 615 (6th Cir. 2010) (quoting *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005)). Furthermore, because there is an interest in the finality of a decision, this Court and other district courts have held that "such motions are extraordinary and sparingly granted." *Derby City Capital*, 949 F. Supp. 2d at 747 (alteration omitted) (quoting *Marshall v. Johnson*, 2007 WL 1175046, at *2 (W.D. Ky. Apr. 19, 2007)).

**Analysis**

Brown first directs the Court to *Denney v. Steak N Shake Operations, Inc.*, wherein Plaintiff Denney slipped at a restaurant and twisted his left leg, which "tweaked [his] knee out of place." 2014 WL 1041709 (6th Cir. Mar. 19, 2014). Denney admitted that no debris, dampness, or other substance had accumulated on the floor to contribute to his fall. However, he

characterized the entire floor as "slick as a skating rink" and speculated that the restaurant's cleaning methods left a slick residue on the floor, creating a dangerous condition. Denney also claimed that he saw others in the restaurant experiencing difficulty walking.

Although the district court granted summary judgment in favor of Steak N Shake, the Sixth Circuit reversed this decision. The court explained that to survive a motion for summary judgment, a plaintiff alleging negligence in a slip-and fall case must show only that:

> '(1) he or she had an encounter with a foreign substance or other dangerous condition on the business premises; (2) the encounter was a substantial factor in causing the accident and the customer's injuries; and (3) by reason of the presence of the substance or condition, the business premises were not in a reasonably safe condition for the use of business invitees.'

559 Fed. App'x. 485, 487 (quoting *Martin v. Mekanhart Corp.*, 113 S.W.3d 95, 98 (Ky. 2003)). The court ruled that summary judgment was inappropriate, as Denney's "competent testimony about others in the restaurant slipping on the floor satisfied this element of his prima facie case." *Id.* at 477-78.

Here, Brown's evidence establishing the existence of a dangerous floor is perhaps limited. Pointing to store manager Greg Greene's statement that the floor was occasionally waxed and buffed, Brown now relies upon the "common knowledge" that waxing and buffing a hard surface reduces friction—for example, she says, "skiers wax and buff their skis in order to go faster in timed competitions." (Docket No. 61 at 4.) She distances herself from the testimony of her own expert, Dr. George Nichols, who testified that the tile floor was safe when dry. Moreover, although the list of claims brought against Banks indicates six falls prior to Brown's accident, the prior incidences are largely attenuated in both time and manner from her own.

However, "weighing the evidence is the jury's task, not the Court's." *Denney*, 559 F. App'x at 487. The disclosure of previous insurance claims related to falls at SuperValu during rainy weather could constitute competent evidence that others also slipped under arguably similar conditions. If so, Brown will have satisfied the relatively unsubstantial burden at this early stage. Therefore, given the possible admissibility of such evidence, and reviewing the facts in a light most favorable to Brown, the Court concludes that summary judgment is inappropriate at this stage.

Unsurprisingly, the parties disagree as to the admissibility of such evidence. "A party opposing a motion for summary judgment cannot use hearsay or other inadmissible evidence to create a genuine issue of material fact." *Sperle v. Mich. Dept. of Correction*, 297 F.3d 483, 495 (6th Cir. 2002) (citing *Weberg v. Franks*, 229 F.3d 514, 526 n.13 (6th Cir. 2000)). Although Banks filed a Motion in Limine to limit the introduction of the list of other claims filed against it, (Docket No. 57), the Court's prior entry of judgment rendered that Motion moot before it was fully briefed. In the instant ruling, the Court makes no judgment as to the admissibility of this evidence. The Court will rule upon the Motion in Limine when fully briefed.

The Court's reconsideration of its prior ruling finds support in *Shelton v. Kentucky Easter Seals Soc., Inc.*, 413 S.W.3d 901 (2013), wherein the Kentucky Supreme Court addressed Kentucky law governing premises liability. In *Shelton*, the wife of a hospital patient fell when several easily seen bedside cords attached to medical equipment entangled her foot. Rejecting the hospital's motion for summary judgment, the Kentucky Supreme Court explained that an open and obvious hazard does not obviate a landowner's general duty to maintain the premises in a reasonably safe condition, nor does it do away with his duty to either eliminate or warn of unreasonably dangerous conditions. Instead, the existence of an open and obvious hazard is one

of many factors to be considered in determining whether the landowner fulfilled his duty of care. *Id.* at 911. Acknowledging the evolution of Kentucky tort law, the court stated:

> We alter the analysis performed in this and future cases of this sort such that a court no longer makes a no-duty determination but, rather, makes a no-breach determination, dismissing a claim on summary judgment or directed verdict when there is no negligence as a matter of law, the plaintiff having failed to show a breach of the applicable duty of care. This approach places the reasonable-foreseeability analysis where it belongs—in the hands of the fact-finders, the jury.

*Id.* at 904. The Court concluded that because a genuine issue of material fact existed as to whether the hospital fulfilled its duty of care to the plaintiff, summary judgment was not appropriate.

The Court affirms its original conclusion that "[t]he risks inherent in walking with wet shoes onto an otherwise dry, hard surface are open, apparent, and obvious to individuals who have experienced rainy weather, and it is common knowledge that such conditions call for care and caution." (Docket No. 59 at 6.) Even under *Shelton*'s more exacting standard, summary judgment remains viable under certain circumstances: "If reasonable minds cannot differ or it would be unreasonable for a jury to find breach of causation, summary judgment is still available to a landowner. And when no questions of material fact exist or when only one reasonable conclusion can be reached, the litigation may still be terminated." *Shelton*, 413 S.W.3d at 916 (citations omitted). However, the Court must consider the newly discovered evidence discussed above in light of *Shelton*'s emphasis upon the foreseeability and breach questions as ones concerning fact. Having done so, the Court perceives an issue of material fact as to whether Banks could have foreseen the harm to Brown and whether the store acted reasonably in

fulfilling its duty to invitees to protect against the risk of physical injury from slipping in rain-dampened shoes on the buffed floor.

Regardless of the admissibility of the new evidence, Brown testified that on other occasions involving rainy weather conditions, Banks had placed a rug in the area where she fell: "They always had a rug on the inner part of that [foyer]. That day they didn't. . . . That's why I wanted to know where did the rug go that used to be here." (Docket No. 28-2 at 43:8-9, 51:14-15.) In essence, Brown alleges that Banks' typical use of the carpet during rainy conditions implicitly acknowledges that the grocery realized that without such a rug, the entryway posed an unreasonably dangerous condition. In addition, Brown's expert has testified that an extra carpet should have been provided. (Docket No. 28-8, Dr. George Nichols Dep., at 18 ("[V]ery simply they could have had some extended carpet runners there . . . the further that you can walk on a dry carpet runner, the better job it's going to do of wiping off or drying off that moisture.").) He also opined that Banks provided an inadequate warning. (Docket No. 28-8 at 18-19.) Whether a warning sign was present at the time of the accident is unclear. Arguably, though, the absence of a rug in the area could have been a contributing factor to Brown's injury. Assuming that this is a plausible and reasonable inference, such questions are best resolved by a jury.

## CONCLUSION AND ORDER

Accordingly, for the foregoing reasons, IT IS ORDERED that Brown's Motion to Alter or Amend Judgment, (Docket No. 61), is GRANTED. The Court's May 14, 2014, Judgment granting Defendant Bank Grocery Company's Motion for Summary Judgment is hereby vacated, with such Motion to be DENIED. The Memorandum Opinion accompanying the Court's prior Judgment is hereby set aside. The Clerk shall reopen the case and restore it to the Court's active docket. Brown shall to respond to the Motion in Limine within twenty-one days from the date this Order

is issued.    This matter is set for a scheduling conference on November 26, 2014 at 9:00 A.M.

Counsel shall confer prior to the call and file a proposed schedule.